**UNITED STATES v. FROST.**

No. 7663.

Circuit Court of Appeals, Ninth Circuit.

March 9, 1936.

Frank E. Flynn, U. S. Atty., and George E. Wood, Asst. U. S. Atty., both of Phœnix, Ariz., and Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to Atty. Gen., and Thomas E. Walsh, Atty. Department of Justice, of Washington, D. C., for the United States.

H. O. Juliani and O. J. Laubscher, both of Tucson, Ariz., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

## 153

DENMAN, Circuit Judge.

Leona B. Frost brought this action on her own behalf and as administratrix of the estate of her deceased husband, James Burl Frost, to recover from the government (1) alleged disability benefits owing and unpaid to the deceased, and (2) the amount of a life insurance policy issued to the deceased in favor of the plaintiff as beneficiary. The policies were war risk insurance contracts, admitted by the government to be in force up to and including the last day of August, 1919. The question as to both insurances is whether the deceased was totally and permanently disabled on or before that date. If not, both policies lapsed then, for nonpayment of premiums.

A verdict was found for plaintiff and judgment entered thereon. The government appeals from the judgment, urging as error the refusal of the trial court to direct a verdict in its favor, and also the admission of certain alleged incompetent evidence in favor of the plaintiff.

The material issue for our consideration, brought here by appropriate motions for directed verdict and seasonable exceptions, is whether plaintiff introduced sufficient evidence to warrant the jury in concluding that the insured was totally and permanently disabled before August 31, 1919. Lumbra v. United States, 290 U.S. 551, 558, 54 S.Ct. 272, 78 L.Ed. 492; Miller v. United States, 294 U.S. 435, 437, 55 S.Ct. 440, 79 L.Ed. 977.

There was sufficient evidence introduced to warrant submitting to the jury the question whether the insured was totally disabled from tuberculosis contracted during his service in the great war and continuing until his death. The only question remaining is whether there was any evidence that his disease was incurable and hence that he was "permanently" disabled prior to September 1, 1919.

There is testimony that insured's physician advised him very soon after he came from the army that he had chronic pulmonary tuberculosis. This may well be a curable disease, and plaintiff's witness, a physician, so testified. Unless plaintiff offered evidence that insured's case was incurable prior to the lapse of premium payments, she cannot recover. Falbo v. United States (C.C.A.9) 64 F.(2d) 948, affirmed 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042.

There is no admissible testimony in the record that insured's disease was incurable prior to the lapse of the payments. Plaintiff's expert medical witness testified on the facts of a hypothetical question that insured, prior to September 1, 1919, was "totally and permanently disabled." The question was objected to, the objection overruled, and exception reserved. The question and answer were improper as involving a determination of the entire case, and the objection, although not well phrased, was sufficiently broad to cover this point, and should have been sustained. United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617. Explaining his answer, the physician testified as to what he meant by total and permanent disability, as follows:

"Total and permanent disability is all rot as far as I am concerned. I interpret total and permanent disability just as you say, that I might say I have many times for filling out insurance blanks, and that is what I determine as the ninety days provision. For the purpose of filling out insurance blanks. I would say a man was crippled, if he has any degree of activity from pulmonary tuberculosis. He would be totally and permanently disabled. For all purposes and fairness to him, I would say that he never would have a chance of working again. A patient that comes to me with an incipient case of tuberculosis, I would say that he may have an opportunity to work again. It could not be considered at that time that he could not work. I have treated a case of incipient tuberculosis where the man became an arrested case. Many of them.

"Q. When you say a man had pulmonary tuberculosis, an incipient case, just beginning, you could not say that it is reasonably likely to continue throughout his life time, can you? A. You can't say; it may and it may not.

"Q. It may or it may not? A. Yes, sir.

"Q. You can't say positively, can you, Doctor? A. No sir, he is considered totally and permanently disabled.

"Q. You mean he is totally disabled and he should not work, and if he does not work, he may get well, is that right? A. He may, or he has got a chance, yes.

"Q. Now, Doctor, as a matter of fact, tuberculosis is one of the most curable of diseases? A. Very curable; very curable."

It is thus seen that no injustice can be done plaintiff by our refusal to consider as evidence the conclusion of the witness,

154

inasmuch as the "permanence" the physician meant was not that required by the law. The unfortunate facts that insured ceased to pay his premiums and failed in 1919 or later to seek a cure at a veteran's sanitarium or elsewhere cannot create a liability on his lapsed policy. The jury should have been instructed to bring in a verdict for the defendant.

Reversed.