all just legal or equitable claims. Holdsworth's instrument, moreover, contained a provision whereby any surplus was agreed to be applied to the payment of outstanding claims which were not specified. Although there was a statement of specified claims and charges which did not include the Bon claim, this enumeration was not in its nature exclusive of other claims; for what Holdsworth bought was to be determined from the language of the instrument of transfer, which expressly provided, not that he shall take Mrs. Braddon's interest, subject only to the payment of such claims as are specified, but that he·shall receive "the part or share to which she is entitled," which was necessarily what would be left after the payment of all just claims and charges against her interest.

Upon the other questions presented, in view of the opinion of the referee, and that of the special term in modifying the report, it is unnecessary to prolong this discussion; concluding, as we have, that the disposition made by the learned judge at special term fairly and equitably determined the rights of the parties.

The interlocutory judgment accordingly should be affirmed, with costs to the respondents Bon as against the appellants. All concur.

---

WAMSLEY v. ATLAS S. S. CO., Limited.

(Supreme Court, Appellate Division, First Department. April 2, 1900.)

1. CARRIERS—TRANSPORTATION OF PROPERTY—FAILURE TO DELIVER—CONVERSION—TRIAL—INSTRUCTIONS—REFUSAL.

Where, in an action against a carrier for conversion of a box, the court charged that it was for the jury to say whether the carrier's conduct in mixing the box with other property was justifiable, so as to excuse it for its refusal to deliver the box on demand, its refusal to charge that if the carrier did not deliver the box because there was no sufficient mark or direction thereon, and if it used reasonable diligence to find the box when notified it was missing, and was misled by the marks on the box, and so failed to deliver it to plaintiff, he could not recover, was not error, since the mere refusal to deliver was not conclusive evidence of the conversion.

2. SAME.

Where plaintiff made no claim that defendant was liable as a common carrier for its alleged conversion of a box delivered to it for transportation, and the only reason for the jury's possible consideration of such fact arose from the suggestions of defendant's counsel, the refusal of his request to charge that defendant was not liable as such was proper.

3. SAME—LIMITATION OF LIABILITY.

Where the jury found, on conflicting evidence, that a passage ticket on defendant's steamship was never delivered to plaintiff, he was not bound by the stipulations therein limiting defendant's liability for loss of baggage to £10, in an action for its conversion by defendant, but was entitled to the full value of the property, since plaintiff was not bound by the ticket unless he saw and had an opportunity to read it.

Appeal from trial term, New York county.

Action by William E. Wamsley against the Atlas Steamship Company, Limited, for the conversion of property delivered to it for transportation. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

Everett P. Wheeler, for appellant.
Alexander S. Bacon, for respondent.

RUMSEY, J. It was determined upon the former appeal in this case (37 App. Div. 553, 56 N. Y. Supp. 284) that at the close of the plaintiff's case sufficient had been shown to require the learned justice to submit to the jury the question whether the defendant had converted the box of photographs, or whether its excuse for not delivering it to the plaintiff upon his demand was a sufficient one. It was also determined (what was very clear from the pleadings themselves) that the action was not brought against the defendant as a common carrier, but purely for the conversion by it of the box and its contents. On this trial the defendant gave testimony tending to show that the marks on the box were such that it had no reason to suppose that it contained anything belonging to the plaintiff, and therefore claimed that it was justified in not delivering it upon demand; and the defendant's counsel sought, by various requests to charge, to obtain from the court a ruling that such was the case. For instance, the court was asked to charge that if the refusal of the defendant to deliver the box to Mr. Massey was due to the fact that he had delivered it to the defendant without any sufficient mark or direction upon the same, and that the defendant used reasonable diligence to find it when its attention was called to the fact that it was missing, then the plaintiff could not recover. The court was also requested to charge that if the defendant was misled by the marks upon the box when it was received, and did not know that it was the property of Mr. Massey, and was in consequence thereof misled into placing it in its store room, and afterwards in its locker, instead of in the baggage room, and the failure to deliver it to the plaintiff or to the plaintiff's assignor was due to such circumstances, and not to any design on the part of the defendant to appropriate it to its own use, then the plaintiff could not recover. The court declined to make either charge as requested, but instructed the jury that all these matters were to be taken into consideration with all the other circumstances in the case. When it is considered that the court had directed the jury that it was for them to say whether the conduct of the defendant or its servants by which the box became mixed up with a lot of other boxes containing signals was, under all the circumstances disclosed, excusable or justifiable, so as not to make the defendant liable for its refusal to deliver it upon demand, and that, if it was, then the defendant was entitled to a verdict, it will be seen that the jury were sufficiently instructed in that respect. As was said in the opinion of the court upon the former trial:

"Upon the admission of a demand and a refusal, with evidence tending to show that at the time of the demand the box was in the defendant's possession, and that the defendant had it in its power to give it up, the plaintiff was entitled to rest. The defendant was then authorized to negative or rebut the presumption of conversion arising therefrom."

The conversion did not necessarily consist in the refusal to deliver, although that was proof of it. It may have arisen from such a disposal of the box by the defendant's servants as to put it out of the power of the defendant to produce it when demanded, and, if such did occur, it was for the jury to say whether the plaintiff was entitled to recover. So, although the facts in the requests above alluded to were proper for the consideration of the jury, they were not conclusive upon the question of conversion, and the court took the right course in presenting them to the jury.

The court was also asked to charge that the defendant was not liable as a common carrier, and that if the jury found that the plaintiff's assignor at the time of loading the box of negatives as freight or baggage on the defendant's steamship did not give to the master, clerk, agent, or owner of the vessel receiving the same a written notice of the true character and value thereof, and did not have the same entered on a bill of lading, then the defendant was not liable as a carrier of the property. This request was properly refused. There was no claim on the part of the plaintiff that the defendant was liable as a carrier. As was said by the court on the former appeal, "The action is not against the defendant as a common carrier upon its contract, nor is it for negligence or breach of duty." It was a simple action for conversion, and the defendant had no right to inject into the case any suggestion that any other claim was made against it than such as might arise against a person who had converted property. The court was therefore justified in refusing to charge upon that point as requested. It may be said that, that question having been suggested by the defendant's counsel, the jury might possibly have taken into consideration the fact that the defendant was a common carrier. The answer is that if counsel take upon themselves to suggest a reason why judgment might be given against his client, which is not relied upon by the opposing party, he does so at his own risk, and he cannot obtain from the court a ruling that a fact that his adversary does not claim, is not to be taken into consideration.

The only remaining question is that of damages. It is suggested in the first place that, by the terms of the contract contained in the passage ticket, the plaintiff could under no circumstances recover a greater sum than £10. But the plaintiff's assignor was not bound by anything contained in the ticket unless he saw it and had an opportunity to read it. If the ticket itself was never given to him, but was retained in the possession of the defendant's agent, it never became operative as a contract to limit the extent of the defendant's liability. Whether it was delivered to Mr. Massey was a seriously disputed question of fact. It was submitted to the jury, who found for the plaintiff in that respect, and therefore no question arises here as to effect of the limitation contained in that document. The plaintiff, therefore, was entitled to recover, as damages of the conversion, the actual value of the contents of the box. That these articles had no market value was quite clearly shown, and, when that appeared, the plaintiff was at liberty to give such other evidence as would assist the jury to assess the actual value. That was to be done by showing the nature of the property, the cost of obtaining the photographs, the

purpose for which they were procured, and the difficulty of replacing them. The jury were also entitled to take into consideration the value of the property to the plaintiff. Stickney v. Allen, 10 Gray, 352; Starkey v. Kelly, 50 N. Y. 676. The fact that the negatives were not good ones, and were not well taken, was, of course, to be considered; but, in addition to that, the jury might also consider that when one has gone a long way to obtain photographs of the scenery of a foreign land, which is difficult to reach, or where the photograph is of some incident which is not likely to be repeated, even a poor representation may be of considerable value, if a picture can be printed from it, because, as far as it goes, it is a correct representation of what occurred. All these things were to be considered by the jury. We cannot say that the amount of the verdict which they rendered was improper.

The judgment and the order appealed from should therefore be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.